Nos. 25-5738/25-5739

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

_____

**RACHEL WELTY; AFTYN BEHN**,

*Plaintiffs-Appellees/Cross-Appellants*,

**v.**

**BRYANT C. DUNAWAY; JASON LAWSON; JENNINGS HUTSON JONES; ROBERT J. CARTER; RAY WHITLEY; ROBERT J. NASH; GLENN R. FUNK; STACEY EDMONSON; BRENT COOPER; RAY CROUCH; HANS SCHWENDIMANN**,

*Defendants-Appellants/Cross-Appellees.*

_____

On Appeal from the United States District Court for the
Middle District of Tennessee at Nashville
The Honorable Julia S. Gibbons
District Court Case No. 3:24-CV-00768

_____

**BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AND
AMERICAN CIVIL LIBERTIES UNION OF TENNESSEE
AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES/CROSS-
APPELLANTS AND AFFIRMANCE**

_____

**February 4, 2026**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Andrew Beck
Meagan Burrows
Scarlet Kim
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
abeck@aclu.org
mburrows@aclu.org
skim@aclu.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENNESSEE
Lucas Cameron-Vaughn
Zee Scout
P.O. Box 120160
Nashville, TN 37212
(615) 645-5067
lucas@aclu-tn.org
zscout@aclu-tn.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 6th Circuit Rule 26.1, Amici American Civil Liberties Union and American Civil Liberties Union of Tennessee state that they are non-profit organizations without parent corporations and do not issue stock.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF INTEREST...................................................................1

INTRODUCTION ...............................................................................2

ARGUMENT ....................................................................................4

    I.    SUPREME COURT PRECEDENT FORECLOSES
        APPELLANTS' EFFORT TO CREATE A NEW CLASS OF
        UNPROTECTED SPEECH.........................................................4

    II.   APPELLANTS MISCONSTRUE THE SPEECH INTEGRAL TO
        CRIMINAL CONDUCT EXCEPTION TO SUBSTANTIALLY
        OVERSTATE THE POTENTIAL LAWFUL APPLICATIONS OF
        THE RECRUITING PROVISION. ........................................... 10

CONCLUSION .................................................................................21

CERTIFICATE OF COMPLIANCE.......................................................23

CERTIFICATE OF SERVICE ...............................................................24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. ACLU,*
  535 U.S. 564 (2002) ..................................................................4

*Ashcroft v. Free Speech Coal.,*
  535 U.S. 234 (2002) ................................................................11

*Bible Believers v. Wayne Cnty.,*
  805 F.3d 228 (6th Cir. 2015) ....................................................5

*Bigelow v. Virginia,*
  421 U.S. 809 (1975) ....................................................... 5, 9, 13

*Blackard v. Memphis Area Med. Ctr. for Women,*
  262 F.3d 568 (6th Cir. 2001) ..................................................19

*Brown v. Ent. Merchs. Ass'n,*
  564 U.S. 786 (2011) .......................................................... *passim*

*Cath. Charities of Jackson, Lenawee, & Hillsdale Cntys. v. Whitmer,*
  162 F.4th 686 (6th Cir. 2025) ...................................................9

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,*
  128 F. Supp. 3d 597 (E.D.N.Y. 2015) ....................................18

*Conant v. Walters,*
  309 F.3d 629 (9th Cir. 2002) ..................................................11

*Doe v. Irwin,*
  615 F.2d 1162 (6th Cir. 1980) ..................................................9

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ................................................................19

*F.P. Dev., LLC v. Charter Twp. of Canton,*
  16 F.4th 198 (6th Cir. 2021) ...................................................17

*Fed. Election Comm'n v. Wis. Right To Life, Inc.,*
  551 U.S. 449 (2007) ..................................................................9

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ......................................................................7, 9

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024)............................................................7, 8

*Gerber v. Herskovitz*,
14 F.4th 500 (6th Cir. 2021) ................................................................1

*Giboney v. Empire Storage & Ice Co.*,
336 U.S. 490 (1949) ................................................................... 10, 11

*Ginsberg v. New York*,
390 U.S. 629 (1968) ..........................................................................7

*Katt v. Dykhouse*,
983 F.2d 690 (6th Cir. 1992) ............................................. 3, 13, 18, 21

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024).................................................... *passim*

*Matter of Welfare of A.J.B.*,
929 N.W.2d 840 (Minn. 2019) ..........................................................20

*McCullen v. Coakley*,
573 U.S. 464 (2014) ..........................................................................5

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ........................................................................15

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc. v. Comm'r,
Ind. State Dep't of Health*, 732 F. Supp. 3d 971 (S.D. Ind. 2024)......................20

*Prince v. Massachusetts*,
321 U.S. 158 (1944) ..........................................................................7

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ........................................................................10

*United States v. Al-Timimi*,
2026 WL 71062 (4th Cir. Jan. 9, 2026)........................................ 11, 12

*United States v. Alvarez*,
567 U.S. 709 (2012) ...................................................................4, 5

*United States v. Charlton*,
737 F. App'x 257 (6th Cir. 2018)......................................................15

*United States v. Hansen*,
599 U.S. 762 (2023) ................................................ 11, 14, 15, 21

*United States v. Stevens*,
559 U.S. 460 (2010) .........................................................................4

*United States v. Williams*,
553 U.S. 285 (2008) ................................................... 11, 12, 14

*Wood v. Eubanks*,
25 F.4th 414 (6th Cir. 2022).............................................................1

*Yellowhammer Fund v. Marshall*,
776 F. Supp. 3d 1071 (M.D. Ala. 2025)...........................................20

**Statutes**

Ariz. Rev. Stat. § 36-2152 .............................................................13

Colo. Rev. Stat. § 13-22-704 .........................................................13

Colo. Rev. Stat. § 13-22-707 .........................................................13

Del. Code Ann. tit. 24, § 1783 .......................................................13

Del. Code Ann. tit. 24, § 1784 .......................................................13

Fla. Stat. § 390.01114 ....................................................................13

Ga. Code Ann. § 15-11-682 ...........................................................13

Iowa Code § 135L.3........................................................................13

Kan. Stat. Ann. § 65-6705 .............................................................13

Mass. Gen. Laws ch. 112, § 12R ...................................................14

Me. Rev. Stat. Ann. tit. 22, § 1597-A ..................................................... 13

Mich. Comp. Laws Ann. § 722.903 .......................................................... 14

Mich. Comp. Laws Ann. § 722.904 .......................................................... 14

Mo. Rev. Stat. § 188.028 .......................................................................... 14

Mont. Code Ann. § 50-20-509 ................................................................. 14

N.C. Gen. Stat. § 90-21.7 ........................................................................ 14

N.C. Gen. Stat. § 90-21.8 ........................................................................ 14

N.H. Rev. Stat. Ann. § 132:34 ................................................................ 14

Nev. Rev. Stat. Ann. § 442.255 ............................................................... 14

Ohio Rev. Code Ann. § 2151.85 .............................................................. 14

Ohio Rev. Code Ann. § 2919.12 .............................................................. 14

Ohio Rev. Code Ann. § 2919.121 ............................................................ 14

18 Pa. Cons. Stat. § 3206 ........................................................................ 14

23 R.I. Gen. Laws § 23-4.7-6 .................................................................. 14

S.C. Code Ann. § 44-41-32 ..................................................................... 14

Tenn. Code Ann. § 39-11-402 ................................................................. 16

Tenn. Code Ann. § 39-12-102 ................................................................. 16

Tenn. Code Ann. § 39-15-201 .......................................................... 2, 12, 16

Utah Code Ann. § 76-7-304 ..................................................................... 14

Va. Code Ann. §16.1-241 ........................................................................ 14

Wis. Stat. Ann. § 48.375 .......................................................................... 14

**Rules**

Fed. R. App. P. 29 ...........................................................................................1

**Other Authorities**

Guttmacher Inst., *Interactive Map: U.S. Abortion Policies and Access After Roe*, Mar. 5, 2023, https://states.guttmacher.org/policies?bans=total-abortion-ban%2C6-week-ban%2C12-week-ban ..................................................12

Post-Trial Jury Instrs., *United States v. Withers*, No. 3:16-cr-0005-wmc, Doc. 126-2 (W.D. Wis. Apr. 28, 2017) ........................15

Utah Dep't of Health & Hum. Servs., *Utah vital statistics: Intentional termination of pregnancy*, https://tinyurl.com/v7je83ku .......................................................14

Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981 (2016)............................................................................19

## STATEMENT OF INTEREST[1]

The American Civil Liberties Union is a nationwide, non-profit, non-partisan organization dedicated to defending principles of liberty and equality embodied in the Constitution and our nation's civil rights laws. The ACLU of Tennessee is an affiliate of the national ACLU (collectively referred to here as the "ACLU"). The ACLU has frequently appeared before this Court, both as direct counsel and as *amicus curiae*, in numerous cases involving the First Amendment, civil liberties, and civil rights. *See, e.g.*, *Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022); *Gerber v. Herskovitz*, 14 F.4th 500 (6th Cir. 2021). As an organization committed both to free speech and to protecting individuals' ability to make their own reproductive choices free from government interference, the ACLU has a strong interest in the proper resolution of this case. Clarity on, and adherence to, governing First Amendment doctrine is key to ensuring protection for individuals who provide information, counseling, and support to people seeking to access vital, legal medical care—not only in this case, but across the Sixth Circuit.

---

[1] Counsel for the parties have consented to the filing of this brief. Further, pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Amici certify that no person or entity, other than Amici, their members, or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief or authored this brief in whole or in part.

**INTRODUCTION**

This case arises from a challenge to a provision of Tennessee law making it a crime for any adult to "intentionally recruit[ ] . . . a pregnant unemancipated minor within this state for the purpose of," *inter alia*, "[p]rocuring an act that would constitute a criminal abortion" under Tennessee law, "regardless of where the abortion is to be procured." Tenn. Code Ann. § 39-15-201(a)(2). As summarized more concretely by the District Court, the law criminalizes speech "recruiting an out-of-state abortion that is entirely *legal* in that state, so long as it would be illegal in Tennessee." Opinion, R.81, PageID#1101. In line with the Ninth Circuit's treatment of an equivalent statute, *see Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024), the District Court correctly held that this speech restriction violates the First Amendment.

Among their contentions on appeal, Appellants—the prosecutors charged with enforcing this criminal statute in the Middle District of Tennessee—challenge the District Court's holding that the challenged provision is facially unconstitutional. They argue, *inter alia*, that the challenged provision is not overbroad, listing out what they call a "wide array of situations" where the recruiting provision could be lawfully applied. Appellants' Brief, Dkt. No. 21 ("App. Br.") at 39. Appellants specifically contend that the provision could be constitutionally applied to a category of expression they have created out of whole cloth—speech "interfering with

parents' rights," *id.* at 44—that they deem unworthy of any constitutional protection. *But see Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 795 n.3 (2011) ("[N]o case, state or federal, support[s] th[e] view" that states have "the power to prevent children from hearing or saying anything without their parents' prior consent." (emphasis omitted)). Appellants, plus one of their amici, also assert that some applications of the recruitment provision fall within the First Amendment exception for speech integral to criminal conduct, including (per an argument by amicus Thomas More Society that Appellants themselves forfeited) speech encouraging lawful services in other jurisdictions. *But see Katt v. Dykhouse*, 983 F.2d 690, 694–97 (6th Cir. 1992) (rejecting a comparable argument).

Amici submit this brief to clarify the protections afforded by the First Amendment under binding Supreme Court precedent, as well as the narrow scope of the limited exceptions to such protections. As detailed below, there is no First Amendment exception for speech interfering with parental rights, and the Court should reject Appellants' unsupported effort to invent a new category of unprotected speech. And while expression that is integral to criminal conduct is exempt from First Amendment protection, Appellants and their amici misapply that narrow exception, substantially overstating the potentially lawful applications of the recruiting provision. The District Court's conclusion that the recruiting provision is unconstitutionally overbroad is correct, and its judgment should be affirmed.

**ARGUMENT**

## I. SUPREME COURT PRECEDENT FORECLOSES APPELLANTS' EFFORT TO CREATE A NEW CLASS OF UNPROTECTED SPEECH.

In attempting to posit conceivably constitutional applications of the Act, Appellants contend that the Act's recruiting provision could be lawfully applied to criminalize a category of expression they call "speech that interferes with parental rights." App. Br. at 44. They assert that this made-up class of speech is entitled to "no First Amendment" protection whatsoever, or, alternatively, that the State's "countervailing compelling interest" in upholding parents' rights means that restrictions on such speech automatically satisfy strict scrutiny. *Id.* at 47. Supreme Court precedent easily refutes both assertions.

Among "the most basic" of First Amendment principles, the Supreme Court has long instructed, is that "the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Brown*, 564 U.S. at 790–91 (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002)). The Court has recognized certain closely circumscribed exceptions to this general rule. *See United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (listing "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct" as "well-defined and narrowly limited classes of speech" falling outside the protection of the First Amendment (quotation marks and citations omitted)); *accord United States v. Alvarez*, 567 U.S. 709, 717–18 (2012) (plurality opinion) (listing the categories of

First Amendment exceptions that "have a historical foundation in the Court's free speech tradition"). But "[t]hese exclusions are rooted in history and tradition, and include only those forms of expression that are 'long familiar to the bar' as falling outside the confines of First Amendment protection." *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 244 (6th Cir. 2015) (en banc) (quoting *Alvarez*, 567 U.S. at 717). And the Court has "emphatically rejected" the argument that the government can make up new categories of speech—including speech directed at minors—beyond the reach of First Amendment protection simply because the "legislature []concludes [that] certain speech is too harmful to be tolerated," calling this a "startling and dangerous proposition." *Brown*, 564 U.S. at 791–92 (quotation marks and citation omitted).

That discredited proposition lies at the heart of Appellants' argument that Tennessee can criminalize a heretofore-unrecognized class of abortion-related "[s]peech interfering with parents' rights." App. Br. at 44. Starting with the basics, the Supreme Court has never exempted speech about abortion from constitutional protection. To the contrary, such expression is fully protected by the First Amendment, including speech about the availability of lawful abortions in other jurisdictions, *see Bigelow v. Virginia*, 421 U.S. 809, 824–25 (1975), and speech that supports or discourages a particular pregnancy outcome, *see, e.g., McCullen v. Coakley*, 573 U.S. 464, 473, 487 (2014). Nor, critically, does speech about lawful

abortion, including "persuasive encouragement," "lose [constitutional] protection when expressed to minors." *Matsumoto*, 122 F.4th at 810, 813; *see also id.* at 812 ("Information and instructions [to minors] regarding the availability and means of procuring an abortion procedure or drug . . . are thus squarely protected.").

The Supreme Court's decision in *Brown v. Entertainment Merchants Association* is all but dispositive of Appellants' speech-interfering-with-parental-rights argument. There, the Court addressed a California statute prohibiting the sale or rental of violent video games to minors. 564 U.S. at 789. The state in *Brown*, like Appellants here, claimed to be acting "in aid of parental authority," *id.* at 802, and, again like Appellants, argued for "a wholly new category of content-based regulation that is permissible only for speech directed at children"—"offensively violent" speech in *Brown*, *id.* at 794, and speech encouraging and supporting lawful abortion here. The Court rejected out of hand the state's effort to carve out new classes of expression directed at minors from First Amendment protection, deeming it "unprecedented and mistaken." *Id.* Properly cabining the very parents' rights cases that Appellants invoke here, *see* App. Br. at 47–48, the Court explained that while states have "legitimate power to protect children from harm," that authority categorically "does not include a free-floating power to restrict the ideas to which

children may be exposed," *Brown*, 564 U.S. at 794 (citing *Ginsberg v. New York*, 390 U.S. 629, 640–641 (1968); *Prince v. Massachusetts*, 321 U.S. 158, 165 (1944)).[2]

*Brown* likewise puts the lie to Appellants' misuse of *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431 (6th Cir. 2024), and similar cases applying the obscene-to-minors doctrine. Appellants pluck from *Friends* this Court's statement that "certain speech, while fully protected when directed to adults, may be restricted when directed towards minors," App. Br. at 46 (quoting *Friends*, 108 F.4th at 438 (additional citations omitted)), to assert that Tennessee can freely criminalize abortion-related speech to minors in the name of protecting parental rights, *id.* at 47.

Appellants misread *Friends*. That decision simply applied the familiar obscene-to-minors principle of the obscenity doctrine, under which the government can "adjust the definition of *obscenity* to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of minors." *Brown*, 564 U.S. at 794 (cleaned up, emphasis added); *accord Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 473 (2025) ("States can impose greater limits on children's

---

[2] As the Court further explained, if states had "the power to prevent children from hearing or saying anything without their parents' prior consent," it would mean that "it could be made criminal to admit persons under 18 to a political rally without their parents' prior written consent—even a political rally in support of laws against corporal punishment of children, or laws in favor of greater rights for minors." *Brown*, 564 U.S. at 795 n.3 (emphasis omitted).

access to *sexually explicit* speech than they can on adults' access." (emphasis added)). But as *Brown* makes unmistakably clear, that principle is confined exclusively to "*sexual* material that would be obscene from the perspective of a child." 564 U.S. at 793 (emphasis in original); *accord Friends*, 108 F.4th at 438 (this principle applies "where the speech is *sexually explicit* and the audience may include children" (citation omitted, emphasis added)). It did not justify a restriction on offensively violent speech in *Brown*, and it does not justify a restriction on abortion-related speech here, for the straightforward reason that neither violent speech nor speech about abortion is inherently obscene, whether expressed to adults or to minors. *See Brown*, 564 U.S. at 793. Appellants thus play fast and loose when they claim that "[p]ornography is *a* recent example" of speech that can be permitted for adult audiences but criminalized when shared with minors. App. Br. at 46 (emphasis added). Pornography (to the extent Appellants use that term as a stand-in for obscene-to-minors speech) is not *an* example of a wider phenomenon—it is in a class of one. *See Brown*, 564 U.S. at 793–94.

Tacitly acknowledging that precedent forecloses their effort to invent a new First Amendment exception, Appellants tack on a fallback argument: Even if speech interfering with parental rights is constitutionally protected, they say, Tennessee should still be allowed to criminalize it because restrictions on such speech

*necessarily* satisfy strict scrutiny. *See* App. Br. at 47.[3] That is not how strict scrutiny—"the most demanding test known to constitutional law"—works. *Paxton*, 606 U.S. at 484 (citation omitted). "Under strict scrutiny, the *Government* must prove that [its speech restriction] . . . furthers a compelling interest and is narrowly tailored to achieve that interest." *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 464 (2007) (emphasis in original). Appellants did not and cannot satisfy this exacting evidentiary burden.

Among the multitude of shortcomings with Appellants' *ipse dixit* assertion, Tennessee does not have a compelling "interest in shielding its citizens from information about activities outside [its] borders," *Bigelow*, 421 U.S. at 827–28, whether the listeners are adults or minors, *see Brown*, 564 U.S. at 794; *cf. Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (finding "no deprivation of the liberty interest of parents in the practice of not notifying them of their children's voluntary decisions" to seek contraception). And the fact that Tennessee criminalizes speech that supports a minor seeking an abortion, but permits speech "advising that minor

---

[3] Appellants do not contest the District Court's conclusion that the recruiting provision discriminates on the basis of both content and viewpoint. *See* Opinion, R. 81, Page ID # 1124. As this Court recently recognized, federal courts have yet to encounter a viewpoint-discriminatory law that survived strict scrutiny. *See Cath. Charities of Jackson, Lenawee, & Hillsdale Cntys. v. Whitmer*, 162 F.4th 686, 696 (6th Cir. 2025).

to carry her pregnancy to term" and encouraging her to obtain prenatal care, "without informing the minor's parents and obtaining their consent," *Matsumoto*, 122 F.4th at 812 n.23, shows that the recruiting provision is "wildly underinclusive when judged against its asserted justification," *Brown*, 564 U.S. at 802. Such underinclusiveness demonstrates that Tennessee is not in fact pursuing its claimed interest in "protect[ing] parents' rights to oversee their children's medical care," App. Br. at 45, but is instead "disfavoring a particular . . . viewpoint," *Brown*, 564 U.S. at 802. That "is alone enough to defeat it." *Id.*; *see also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

In sum, Appellants' assertion that the recruiting provision can be lawfully applied to an invented class of "speech interfering with parental rights" is wrong across the board, and it should have no bearing on the Court's overbreadth analysis.

## II. APPELLANTS MISCONSTRUE THE SPEECH INTEGRAL TO CRIMINAL CONDUCT EXCEPTION TO SUBSTANTIALLY OVERSTATE THE POTENTIAL LAWFUL APPLICATIONS OF THE RECRUITING PROVISION.

Unlike Appellants' fabricated category of speech interfering with parental rights, speech that is integral to criminal conduct is exempt from First Amendment protection. *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). But in their strained effort to imagine lawful applications of the recruiting provision,

Appellants and their amici misapply this narrow First Amendment exception in numerous respects, substantially overstating the provision's constitutional applications.

The Supreme Court has recognized that the First Amendment does not "extend[] its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Id.* But for this limited exception to apply, the Court has made clear that the speech at issue must be "*intended* to bring about a *particular unlawful act.*" *United States v. Hansen*, 599 U.S. 762, 783 (2023) (emphasis added); *accord United States v. Williams*, 553 U.S. 285, 298 (2008); *United States v. Al-Timimi*, 2026 WL 71062, at *12 (4th Cir. Jan. 9, 2026) ("[T]o prove criminal solicitation, the government must prove the intentional encouragement of a particular unlawful act and the requisite intent to bring about the unlawful act."); *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) ("The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it."); *Conant v. Walters*, 309 F.3d 629, 638 (9th Cir. 2002) (rejecting government's argument that "a doctor's 'recommendation' of marijuana may encourage illegal conduct by the patient").

In explaining the narrow contours of the speech integral to criminal conduct exception, the Court has also recognized "an important distinction between a proposal to engage in illegal activity and the abstract advocacy of illegality."

*Williams*, 553 U.S. at 298–99. Thus, for example, speech "recommend[ing] . . . *a particular piece of purported child pornography* with the intent of initiating a transfer" falls within the First Amendment exception for criminal solicitation. *Id.* at 300 (emphasis added); *see also Al-Timimi*, 2026 WL 71062, at *11 ("[T]he First Amendment does not protect speech that . . . concretely and intentionally advises listeners as to how to violate the law, urges them to do so, and provides the tools necessary to carry out the violation."). By contrast, the Court clarified that statements advocating in favor of illegal activity—*e.g.*, "I believe that child pornography should be legal"—or even arguing in general terms that a listener should violate the law—*e.g.*, "I encourage you to obtain child pornography"—are speech protected by the First Amendment. *Williams*, 553 U.S. at 300.

These principles impose substantial limitations on the scenarios in which the recruiting provision could be lawfully applied. That provision, by its terms, purports to criminalize recruitment for any abortion that would be illegal if performed in Tennessee, "regardless of where the abortion is to be procured," Tenn. Code Ann. § 39-15-201(a)(2)—that is, regardless of whether the abortion itself is perfectly lawful, as it is (up until at least the first trimester) in over thirty states.[4] As a matter of law,

_____

[4] *See* Guttmacher Inst., *Interactive Map: U.S. Abortion Policies and Access After Roe*, Mar. 5, 2023, https://states.guttmacher.org/policies?bans=total-abortion-ban%2C6-week-ban%2C12-week-ban (last updated January 21, 2026).

the recruiting provision cannot be constitutionally applied to speech encouraging a minor to seek lawful abortion care. *See Bigelow*, 421 U.S. at 824–25; *accord Katt*, 983 F.2d at 697. Appellants and their amici repeatedly misapply these principles in their exaggerated account of the recruiting provision's lawful applications.

Take, for example, Appellants' contention that the Act can be constitutionally applied to criminalize speech that encourages or persuades a minor to obtain an abortion in any state with a parental notification or consent law. *See* App. Br. at 41–42, 50–51. According to Appellants, because many states "require parental involvement before a minor can obtain an elective abortion," any speech that encourages or persuades a minor to obtain an abortion in such a state is necessarily speech integral to an illegal abortion that Tennessee can freely criminalize. *Id.* at 50.

But Appellants' hypothetical scenario does not involve speech that even remotely qualifies as speech integral to criminal conduct. Nearly all of this speech would not necessarily involve an underlying unlawful act since, in all but one of the states Appellants point to, the very laws they cite *expressly* authorize a minor to bypass parental involvement via a court order authorizing an abortion without parental notification or consent.[5] In each of these states—including, *e.g.*, the

---

[5] *See* Ariz. Rev. Stat. § 36-2152; Colo. Rev. Stat. §§ 13-22-704, 13-22-707; Del. Code Ann. tit. 24, §§ 1783–1784; Fla. Stat. § 390.01114; Ga. Code Ann. § 15-11-682; Iowa Code § 135L.3; Kan. Stat. Ann. § 65-6705; Me. Rev. Stat. Ann. tit. 22, §

neighboring states of North Carolina and Virginia, *contra* App. Br. at 42—a court-authorized abortion is just as lawful as an abortion with parental notification or consent. People may encourage a minor to obtain an abortion in any of these states without "intend[ing] to bring about a particular unlawful act," and Appellants are wrong to count such speech among the recruiting provision's constitutional applications. *Hansen*, 599 U.S. at 783; *accord Williams*, 553 U.S. at 298.[6]

Appellants fare no better in suggesting that the recruiting provision could be constitutionally applied to recruitment "incident to" either (a) extortion and coercion

---

1597-A; Mass. Gen. Laws ch. 112, § 12R; Mich. Comp. Laws Ann. §§ 722.903–722.904; Mo. Rev. Stat. § 188.028; Mont. Code Ann. § 50-20-509; Nev. Rev. Stat. Ann. § 442.255; N.H. Rev. Stat. Ann. § 132:34; N.C. Gen. Stat. §§ 90-21.7–21.8; Ohio Rev. Code Ann. §§ 2919.12, 2919.121, 2151.85; 18 Pa. Cons. Stat. § 3206; 23 R.I. Gen. Laws § 23-4.7-6; S.C. Code Ann. § 44-41-32; Va. Code Ann. §16.1-241; Wis. Stat. Ann. § 48.375.

[6] There is only one state—Utah—that requires parental notification of a minor's abortion decision with no judicial bypass alternative. *See* Utah Code Ann. § 76-7-304. The idea that Tennesseans would encourage minors to seek an abortion more than a thousand miles away in Utah is fanciful—in 2023, the most recent year for which statistics are publicly available, not a single Tennessee resident (whether adult or minor) obtained an abortion in Utah. *See* Utah Dep't of Health & Hum. Servs., *Utah vital statistics: Intentional termination of pregnancy*, https://tinyurl.com/v7je83ku (last visited Jan. 29, 2026). But even if a Tennessean exhorted minors to seek abortions in Utah without parental consent, that speech would *still* be constitutionally protected as abstract advocacy of unlawful activity, unless the government could prove intentional solicitation of a specific offense or material aiding and abetting. *See Williams*, 553 U.S. at 300 (explaining that the statement "I encourage you to obtain child pornography" is protected under the First Amendment).

or (b) the Act's separate crimes of harboring and transporting. *See* App. Br. at 42–43. With respect to the former, Appellants give the examples of blackmail and threats of physical harm, theorizing that the recruitment provision could be lawfully applied to recruitment incident to these pre-existing crimes. *Id.* at 43. But the Act's recruiting provision would not apply to Appellants' examples at all: By Appellants' own account, "'[t]o recruit means to *persuade* someone to join in or to help with some activity,'" *id.* at 18 (emphasis added) (quoting Post-Trial Jury Instrs., *United States v. Withers*, No. 3:16-cr-0005-wmc, Doc. 126-2, at 12 (W.D. Wis. Apr. 28, 2017)), whereas threatened physical harm and blackmail are inherently *coercive*. No one would (without irony) describe an armed robber shouting "your money or your life" as having "persuaded" his victims to fork over the cash or "recruited" his victims to participate in the enterprise. *Cf. United States v. Charlton*, 737 F. App'x 257, 261 (6th Cir. 2018) ("Coercion is not the same as persuasion[.]"); *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024) (distinguishing persuasion from coercion). Appellants cannot manufacture constitutional applications of the recruitment provision by describing scenarios *outside* the statute's "sweep." *Hansen*, 599 U.S. at 770 (citation omitted).

Appellants' contention that the recruitment provision could be constitutionally applied to recruitment incident to the Act's separate harboring and transporting offenses, *see* App. Br. at 42–43, fails for similar reasons. To quote

Appellants, the recruiting provision is "narrow[]": "It prohibits only the intentional targeting of an unemancipated minor to induce or persuade them to obtain an elective abortion without their parents' or guardian's consent." *Id.* at 8. Specifically, it covers only the "intentional[] recruit[ment]" of "a pregnant unemancipated minor within this state *for the purpose of*" concealing or procuring an abortion, or obtaining an abortion-inducing drug. Tenn. Code Ann. § 39-15-201(a) (emphasis added). As Appellees correctly argue, the provision is not a catch-all prohibition on anything that might be described as recruiting, but a prohibition on recruitment only *for specifically delineated purposes*—and, by the statute's express terms, those purposes do not include the Act's separate prohibitions on harboring and transporting. *See id.* When Appellants speak of recruiting "incident to . . . [t]he Act's prohibitions on 'harboring' and 'transporting,'" App. Br. at 42, they are not invoking an application of the recruiting provision, but are simply describing soliciting[7] and/or aiding and abetting[8] violations of the separate harboring and transporting prohibitions. So once again, in attempting to list lawful applications of the recruiting provision, Appellants have described scenarios to which that provision would not apply, and that do not fall within the provision's legitimate sweep.

---

[7] *See* Tenn. Code Ann. § 39-12-102.

[8] *See* Tenn. Code Ann. § 39-11-402.

Taking a different tack and advancing a theory that Appellants do not, Amicus Thomas More Society ("TMS") asserts that it is "perfectly constitutional" for Tennessee to criminalize speech that encourages minors to seek *legal* abortion care in other states—and, so the argument goes, *all* speech recruiting a minor's out-of-state abortion falls within the recruiting provision's legitimate sweep. Br. of TMS as Amicus Curiae, Dkt. No. 26 ("TMS Br.") at 2.[9] Saying that the "fundamental error" in the decision below was the District Court's conclusion "that the speech-integral-to-unlawful-conduct doctrine is inapplicable to speech that helps Tennessee residents obtain legal abortions in other states," TMS contends that because *the recruiting provision itself* renders such speech unlawful, the speech-integral-to-unlawful-conduct exception applies. *Id.* at 8. Under TMS's circular argument, the narrow speech-integral-to-crime exception to the First Amendment would swallow the rule, affording states free rein to criminalize speech.

---

[9] Appellants did not raise many of the theories pressed in TMS's brief in the proceedings below, nor did they mention (much less endorse) those arguments in their opening brief. Arguments not advanced by Appellants and raised only by an amicus, *see* TMS Br. at 1–15, 24–26, are forfeited, and the Court should not consider them, *see F.P. Dev., LLC v. Charter Twp. of Canton*, 16 F.4th 198, 203 (6th Cir. 2021) (argument briefed by amici but not parties was forfeited, because "[w]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties" (citations omitted)). While the ACLU responds to some of those arguments here, the Court need not and should not address them. *See id.*

That TMS cites no authority endorsing this broadside against the First Amendment is unsurprising. In a long line of cases that go unmentioned in TMS's brief, this Court and others have consistently rejected the premise that a statute restricting speech can "manufacture both the underlying offense and the exception to otherwise protected speech." *Matsumoto*, 122 F.4th at 814 (quotation marks omitted).

In *Katt v. Dykhouse*, for example, this Court considered whether the First Amendment protected the speech of a Michigan financial planner concerning insurance rebating services that Michigan had made it unlawful to provide or offer, but that were legally available in Florida. 983 F.2d at 694–97. Under TMS's theory, the First Amendment did not bar Michigan from outlawing the planner's speech "because Michigan law bans the *offering* and *solicitation* of an insurance rebate as well as the rebate itself." *Id.* at 696 (emphasis in original). Yet even applying the less protective *Central Hudson* standard applicable to commercial speech, this Court rejected that argument as "a mere tautology: Katt's offer to rebate in Florida concerns an unlawful activity because Michigan has outlawed offers to rebate." *Id.* at 697. Instead, this Court held that where the "*underlying*" conduct is legal in the state where it is to occur, a state cannot outlaw speech soliciting that conduct and escape First Amendment scrutiny under a circular crime-facilitating speech theory. *Id.* (emphasis in original); *accord Centro De La Comunidad Hispana De Locust*

*Valley v. Town of Oyster Bay*, 128 F. Supp. 3d 597, 613–14 (E.D.N.Y. 2015), *aff'd*, 868 F.3d 104 (2d Cir. 2017).[10]

Other courts and commentators have likewise recognized that "the *Giboney* doctrine can't justify treating speech as 'integral to illegal conduct' simply because the speech is illegal under the law that is being challenged." Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 987–88 (2016). As the Ninth Circuit explained in rejecting a virtually identical defense of a virtually identical law:

> In a case where the adult procures a legal abortion by recruiting the minor, but not by harboring or transporting the minor, there is no underlying offense but the recruitment itself. To the extent that such recruitment is protected speech, it cannot serve to self-invalidate. *Labeling protected speech as criminal speech cannot, by itself, make that speech integral to criminal conduct.*

---

[10] *Katt* is not the only Sixth Circuit precedent that TMS fails to reckon with. In another argument that Appellants did not raise, *see* Note 9, *supra*, TMS contends that "[i]f the district court's judgment is ever narrowed or vacated, . . . then the state may enforce section 39-15-201(a) against anyone who violated the statute while the erstwhile injunction was in effect" because a "vacated injunction provides no shield to those who chose to violate a statute in reliance on that erroneous ruling." TMS Br. at 24–25. In support of this extraordinary assertion, TMS cites Justice Stevens's solo concurrence in *Edgar v. MITE Corp.*, 457 U.S. 624 (1982), an out-of-circuit district court's footnote, and a law review article written by TMS's lawyer. *See* TMS Br. at 25–26. TMS notably does not cite this Court's decision in *Blackard v. Memphis Area Medical Center for Women*, which held that a substantially similar argument was "without merit," explaining that Justice Stevens's views in *Edgar* "were not endorsed by a majority of the Court" and that adopting this theory "would be tantamount to fostering an unconstitutional regime." 262 F.3d 568, 579–80 (6th Cir. 2001) (citation omitted).

*Matsumoto*, 122 F.4th at 814 (emphasis added). Federal district courts and state supreme courts have ruled similarly. *See Yellowhammer Fund v. Marshall*, 776 F. Supp. 3d 1071, 1108 (M.D. Ala. 2025) ("Here, the nonspeech conduct—obtaining an abortion in a State where abortion is legal—is not unlawful, so any speech connected to obtaining such care is not integral to, nor in furtherance of, criminal conduct and is therefore not an exception to First Amendment protection."); *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc. v. Comm'r, Ind. State Dep't of Health*, 732 F. Supp. 3d 971, 978 (S.D. Ind. 2024) ("Providing unemancipated pregnant minors . . . truthful information regarding out-of-state options for legally obtaining an abortion and providing medical referrals and/or contacting out-of-state providers on behalf of such minors seeking to obtain abortion services that are legal in those states is . . . *not* inducing criminal activity." (emphasis in original)); *Matter of Welfare of A.J.B.*, 929 N.W.2d 840, 859 (Minn. 2019) (rejecting as "circular" the argument that "the speech covered by the statute is integral to criminal conduct because the statute itself makes the conduct illegal").

If TMS's theory were right, then "any criminally prohibited speech would be integral to unlawful conduct, and any statute punishing criminally prohibited speech would be immune from strict scrutiny simply because the legislature had criminalized it." *Yellowhammer*, 776 F. Supp. 3d at 1108. As this Court has held,

*see Katt*, 983 F.2d at 696–97—a holding TMS does not so much as mention—that is not the law.

*   *   *

In sum, while it is possible that there are circumstances to which the Act's recruitment provision could be lawfully applied under the First Amendment's narrow exception for expression "intended to bring about a particular unlawful act," *Hansen*, 599 U.S. at 783, Appellants and their amici significantly overstate the applications of the crime-facilitating speech exception here. Describing scenarios where the recruitment provision has no application, *see* App. Br. at 42–43, or where application of the provision would clearly violate the First Amendment, *see id.* at 41–42, 50–51; TMS Br. at 8, fails to establish that the provision has a plainly legitimate sweep that is not substantially outweighed by its myriad unconstitutional applications, *see Hansen*, 599 U.S. at 782, and does not afford a basis to disturb the judgment below, *see Matsumoto*, 122 F.4th at 814–15 (concluding that a virtually identical restriction is "unconstitutionally overbroad").

## CONCLUSION

For the foregoing reasons and those detailed in Appellees' brief, the judgment below should be affirmed.

Dated: Feb. 4, 2026

Respectfully submitted,


/s/ Andrew Beck
Andrew Beck
Meagan Burrows
Scarlet Kim
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
abeck@aclu.org
mburrows@aclu.org
skim@aclu.org

Lucas Cameron-Vaughn
Zee Scout
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 645-5067
lucas@aclu-tn.org
zscout@aclu-tn.org

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that this Brief of Amici Curiae complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding parts of the document exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1), it contains 5,189 words and is 22 pages long.

I further certify this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 14-point Times New Roman font in Microsoft Word.

Dated: Feb. 4, 2026

/s/ Andrew Beck
Andrew Beck

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on February 4, 2026, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system.

Dated: Feb. 4, 2026

/s/ Andrew Beck
Andrew Beck

*Counsel for Amici Curiae*