Nos. 25-5738/25-5739

————————————————————

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

————————————————————

RACHEL WELTY and AFTYN BEHN,

*Plaintiffs/Appellees/Cross-Appellants,*

v.

BRYANT DUNAWAY et al.,

*Defendants/Appellants/Cross-Appellees.*

————————————————————

On Appeal from the United States District Court for the
Middle District of Tennessee, No. 3:24-cv-768

————————————————————

**REPLY BRIEF OF
PLAINTIFFS/APPELLEES/CROSS-APPELLANTS**

Daniel A. Horwitz
Sarah L. Martin
Laura E. Cantwell
HORWITZ LAW, PLLC
4016 Westlawn Drive
Nashville, TN 37209
(615) 739-2888
daniel@horwitz.law

William Powell
*Counsel of Record*
Rupa Bhattacharyya
Shelby Calambokidis
Elizabeth R. Cruikshank
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
Georgetown Law
600 New Jersey Avenue NW
Washington, DC 20001
(202) 661-6629
whp25@georgetown.edu

*Attorneys for Plaintiffs/Appellees/Cross-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION......................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.    Plaintiffs have standing for their vagueness claim. ................................ 1

        A.    Plaintiffs' conduct is arguably affected with a constitutional interest............. 3

        B.    Plaintiffs' conduct is arguably prohibited by the recruitment provision. ........ 4

        C.    Plaintiffs face a credible threat of enforcement. ............................................ 11

    II.    The recruitment provision is unconstitutionally vague. ....................................... 13

        A.    The meaning of "recruit" is vague in the abortion context. ........................... 15

        B.    The provision's mens rea elements do not cure its vagueness. ..................... 19

        C.    Defendants' other arguments in support of a limiting construction are unavailing. .............................................................................................. 22

    III.  If the court rules for Plaintiffs on vagueness, it should remand for reconsideration of the scope of relief. ..................................................................... 24

CONCLUSION ............................................................................................................. 25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Babbitt v. United Farm Workers Nat'l Union,*
442 U.S. 289 (1979)......................................................................................2, 11

*Barton v. Barr,*
590 U.S. 222 (2020).......................................................................................... 23

*Belle Maer Harbor v. Charter Township of Harrison,*
170 F.3d 553 (6th Cir. 1999)........................................................................14, 15

*Boos v. Barry,*
485 U.S. 312 (1988).......................................................................................... 21

*Bost v. Ill. State Bd. of Elections,*
146 S. Ct. 513 (2026).......................................................................................... 3

*Brown v. Ent. Merchants Ass'n,*
564 U.S. 786 (2011).......................................................................................... 17

*Cath. Charities of Jackson, Lenawee & Hillsdale Counties v. Whitmer,*
162 F.4th 686 (6th Cir. 2025)....................................................................11, 12, 13

*Chiles v. Salazar,*
146 S. Ct. 1010 (2026)..................................................................................passim

*Christian Healthcare Ctrs., Inc. v. Nessel,*
117 F.4th 826 (6th Cir. 2024)............................................................................ 4

*City of Chicago v. Morales,*
527 U.S. 41 (1999)............................................................................................ 15

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.,*
158 F.4th 732 (6th Cir. 2025) (en banc) ...............................................2, 3, 4, 6

*Doe v. Burlew,*
165 F.4th 525 (6th Cir. 2026)........................................................................... 24

*Falls v. Goins,*
673 S.W.3d 173 (Tenn. 2023) .......................................................................... 23

*First Choice Women's Res. Ctrs., Inc. v. Davenport,*
608 U.S. ----, No. 24-781, 2026 WL 1153029 (U.S. Apr. 29, 2026)...................2, 6, 12

*Friends of George's, Inc. v. Mulroy,*
108 F.4th 431 (6th Cir. 2024)............................................................................ 5

*Gonzales v. Carhart,*
550 U.S. 124 (2007) ........................................................................... 19

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) ........................................................................... 2

*Johnson v. United States,*
576 U.S. 591 (2015) ...................................................................... 4, 6, 14

*Kentucky v. Yellen,*
54 F.4th 325 (6th Cir. 2022) ............................................................ 4, 5

*L.W. ex rel. Williams v. Skrmetti,*
83 F.4th 460 (6th Cir. 2023) ............................................................ 25

*McKay v. Federspiel,*
823 F.3d 862 (6th Cir. 2016) ........................................................... 6

*NAACP v. Button,*
371 U.S. 415 (1963) .......................................................................... 14

*Peoples Rights Org., Inc. v. City of Columbus,*
152 F.3d 522 (6th Cir. 1998) ........................................................... 19

*Ream v. U.S. Dep't of Treasury,*
--- F.4th ----, No. 25-3259, 2026 WL 1078212 (6th Cir. Apr. 21, 2026) ............... 4, 13

*Reno v. ACLU,*
521 U.S. 844 (1997) ...................................................................... 2, 14

*S.D. Warren Co. v. Me. Bd. of Env't Prot.,*
547 U.S. 370 (2006) .......................................................................... 22

*Smith v. Goguen,*
415 U.S. 566 (1974) .......................................................................... 19

*Springfield Armory, Inc. v. City of Columbus,*
29 F.3d 250 (6th Cir. 1994) ............................................................. 15

*State v. Casper,*
297 S.W.3d 676 (Tenn. 2009) ........................................................ 20

*State v. Deberry,*
651 S.W.3d 918 (Tenn. 2022) ........................................................ 24

*State v. Dorantes,*
331 S.W.3d 370 (Tenn. 2011) ........................................................ 10

*State v. Jarman,*
604 S.W.3d 24 (Tenn. 2020) .......................................................... 10

*State v. Mateyko*,
 53 S.W.3d 666 (Tenn. 2001) ...................................................................... 8

*Susan B. Anthony List v. Driehaus*,
 525 F. App'x 415 (6th Cir. 2013) ............................................................ 11

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) .............................................................................. 2, 11

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ................................................................................. 2

*United States v. Snead*,
 No. 21-4333, 2022 WL 17975015 (4th Cir. Dec. 28, 2022) ...................... 16

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
 455 U.S. 489 (1982) ............................................................................ 14, 19

*Virginia v. Am. Booksellers Ass'n*,
 484 U.S. 383 (1988) ................................................................................. 6

*Warth v. Seldin*,
 422 U.S. 490 (1975) ................................................................................. 5

*Yoder v. Bowen*,
 146 F.4th 516 (6th Cir. 2025) ................................................................. 12

**Statutes**

Tenn. Code Ann. § 39-11-302 ..........................................................8, 19, 21

Tenn. Code Ann. § 39-15-201 .............................................................1, 9, 23

**Rules**

Fed. R. App. P. 28.1(c)(4) .......................................................................... 2

**Other Authorities**

Post-Trial Jury Instrs., *United States v. Withers*,
 No. 16-CR-0005, ECF No. 126-2 (W.D. Wis. Apr. 28. 2017) ............. 15, 16

*Recruit*, Cambridge Dictionary ..................................................................... 8

*Recruit*, Merriam-Webster Dictionary ......................................................... 15

*Recruit*, Oxford English Dictionary.....................................................8, 15, 16

*Trafficking*, Cambridge Dictionary.............................................................. 16

## INTRODUCTION

Every time Defendants file a brief, they say the recruitment provision of Tenn. Code Ann. § 39-15-201(a) means something different. Their most recent submission concedes that Plaintiffs would violate the statute if they told minors, "I *want you* to come with me to get an out-of-state abortion without your parents' consent." Third Br. 8. That hypothetical statement is strikingly similar to what Plaintiff Aftyn Behn posted on social media: "I welcome the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail." X Post, R.1-5, PageID #40. The legislative sponsor of the law said that Behn's post "is what recruitment looks like." House Tr., R.1-6, PageID #61. And it appears that Defendants now agree. Defendants' hypothetical underscores that Plaintiffs face a credible threat of enforcement. And Defendants' shifting interpretations illustrate that no ordinary meaning of "recruit" makes sense in the context of abortion. If the Court reaches the protective cross-appeal, it should hold that Plaintiffs have standing for their vagueness claim and that the recruitment provision is unconstitutionally vague.

## ARGUMENT

### I.   Plaintiffs have standing for their vagueness claim.

Plaintiffs have standing for their vagueness claim because the recruitment provision "burdens" and "deters the exercise" of their constitutional rights, including

1

their First Amendment rights.[1] *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. ----, No. 24-781, 2026 WL 1153029, at *8 (U.S. Apr. 29, 2026). Vague laws impose an "obvious chilling effect." *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (internal quotation marks and alteration omitted). To prevent that chilling effect, the Supreme Court permits plaintiffs to challenge vague laws without waiting for enforcement. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 303 (1979). A plaintiff has pre-enforcement standing if they engage in conduct the Constitution "arguably protects," their conduct is "arguably proscribed" by the challenged law, and "they face a credible threat" of enforcement. *Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 742 (6th Cir. 2025) (en banc) (internal quotation marks omitted).

Defendants seek to transform that straightforward test into an impossible-to-escape labyrinth, with new obstacles hiding around every corner. But recent decisions

---

[1] This brief is "limited to the issues presented by the cross-appeal." Fed. R. App. P. 28.1(c)(4). Defendants have suggested that "standing is an issue only in the principal appeal." Dkt. 71 at 2 n.1. That is wrong. While the primary appeal concerns only Plaintiffs' First Amendment claims, the cross-appeal concerns only Plaintiffs' vagueness claim. And because "standing is not dispensed in gross," Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). The question of whether Plaintiffs have standing for their vagueness claim is thus presented only in the cross-appeal.

from the Supreme Court and this Court bulldoze Defendants' hedge maze. The en banc decision in *Olentangy* reaffirmed that plaintiffs must show only that the challenged law "could be read to proscribe" their conduct and that they face a "credible" threat of prosecution, not a certain one. *See* 158 F.4th at 742 (internal quotation marks omitted). And the Court found a credible threat based on a refusal to disavow enforcement, even though the challenged policy had been on the books for more than a decade without ever being enforced. *Id.* In *Chiles v. Salazar*, 146 S. Ct. 1010, 1019 n.* (2026), the Supreme Court likewise held that the plaintiff had pre-enforcement standing even though the challenged law had never been enforced. The Court held there was a credible threat merely because "Colorado has fought this suit through three courts over three years and, at argument here, expressly declined to disavow enforcement." *Id.* The Court also denied Colorado's effort to defeat standing by adopting a narrowing construction that would render much of the statutory text superfluous. *Id.*

All of those factors favor standing here as well. And "no more is required." *Id.* This Court should reject Defendants' invitation to "make standing law more complicated than it needs to be." *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 523 (2026) (internal quotation marks omitted).

### A.     Plaintiffs' conduct is arguably affected with a constitutional interest.

Plaintiffs' vagueness claim implicates constitutional interests, which Defendants do not contest. "Conduct is arguably affected with a constitutional interest, for purposes of standing, when the Constitution arguably invalidates a statute that

3

proscribes that conduct." *Ream v. U.S. Dep't of Treasury*, --- F.4th ----, No. 25-3259, 2026 WL 1078212, at *3 (6th Cir. Apr. 21, 2026). Plaintiffs' vagueness claim arguably implicates their constitutional interest in "fair notice of the conduct [the recruitment provision] punishes." *Johnson v. United States*, 576 U.S. 591, 595 (2015). And if Plaintiffs prevail on their vagueness challenge, that would render the provision invalid.

**B.      Plaintiffs' conduct is arguably prohibited by the recruitment provision.**

**1.** The recruitment provision arguably proscribes Plaintiffs' conduct. This Court has repeatedly rejected Defendants' contention that the "arguably" qualifier does not apply to statutory interpretation. *See* Third Br. 3-6. "Conduct is arguably proscribed by a statutory provision if, on 'a *plausible* interpretation of the statute,' the conduct is forbidden." *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 843 (6th Cir. 2024) (quoting *Kentucky v. Yellen*, 54 F.4th 325, 337 (6th Cir. 2022)). If any doubt remained, the en banc Court eliminated it by framing the test as whether the challenged law "could be read to proscribe" the plaintiff's conduct. *Olentangy*, 158 F.4th at 742 (internal quotation marks omitted).

Defendants are wrong to suggest that *Yellen* "was a creature of *Chevron*'s since-discarded framework." Third Br. 6. *Yellen* concerned a challenge by Kentucky and Tennessee to a provision of the American Rescue Plan that barred states from using federal stimulus funds to offset tax cuts. 54 F.4th at 328. The states argued that the condition was vague because, given that money is fungible, it could be read to ban all

tax cuts. *Id.* The Court agreed. It held that the law was impermissibly vague and that an interpretive regulation could not salvage it. *Id.* at 352-54. Far from deferring to the agency's interpretation, the Court held that *Chevron* did not apply because the Spending Clause requires "Congress *itself*" to speak clearly when regulating "a core aspect of state sovereignty" like the taxing power. *Id.* at 354.

*Yellen*'s standing analysis was based not on *Chevron*, but on bedrock justiciability principles. *See id.* at 335-38. The Court explained that "[s]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Id.* at 349 n.16 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Therefore, "it would be inappropriate for [the Court], at the justiciability stage, to render a merits interpretation of the Offset Provision and to then declare based on that merits interpretation that the controversy is not even justiciable." *Id.* That reasoning forecloses Defendants' argument that statutes must be definitively construed for purposes of standing.

This Court's decision in *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024), is not to the contrary. *Friends* concerned a Tennessee law that incorporated a definition that had "existed in the Tennessee Code for decades" and that the Tennessee Supreme Court had already interpreted. *Id.* at 433-34. Because federal courts must "apply a state court's interpretation of state law," *id.* at 435, no other interpretation was even arguable in that unique context. To the extent *Friends* could be read to require that statutes always be definitively construed for purposes of standing, even in the

absence of a binding state-court interpretation, the en banc Court has now corrected that misstatement of the standard. *See Olentangy*, 158 F.4th at 742.

Basing standing on an arguable interpretation does not produce advisory opinions. *Contra* Third Br. 5. Fear of enforcement under a vague law can produce a present chilling effect on the exercise of constitutional rights separate from the future harm of actual enforcement. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988). As the Supreme Court recently put it, "[t]he value of a sword of Damocles is that it hangs—not that it drops." *First Choice*, 2026 WL 1153029, at *9 (internal quotation marks omitted). That chilling effect produces a justiciable controversy, even if a court ultimately rejects the plaintiff's claim on the merits.

Finally, Defendants' position cannot be right because it would render pre-enforcement vagueness challenges impossible. Defendants say that to have standing, a plaintiff must show that their conduct arguably fits within the "proper" construction of the statute. Third Br. 4. But a plaintiff who satisfies that standard would necessarily lose on a vagueness claim, which requires showing that the law does not *have* a proper construction. *See Johnson*, 576 U.S. at 595. And indeed, "courts will not entertain vagueness challenges on behalf of individuals whose conduct clearly falls within the ambit of the statute." *McKay v. Federspiel*, 823 F.3d 862, 870 (6th Cir. 2016) (internal alterations and quotation marks omitted). The Court should not accept Defendants' invitation to turn pre-enforcement standing into a catch-22.

**2.** On any interpretation of the recruitment provision, including Defendants' narrow one, Plaintiffs' conduct is arguably covered. Defendants all but concede the point in the Third Brief. They admit that "[i]f Plaintiffs told minors, 'I *want you* to come with me to get an out-of-state abortion without your parents' consent,' that'd be recruiting." Third Br. 8. And Behn's social-media post sent nearly the same message: "I welcome the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail." X Post, R.1-5, PageID #40. The legislative sponsor of the recruitment provision previously said that Behn's post "is what recruitment looks like." House Tr., R.1-6, PageID #61. And evidently Defendants now agree. That alone shows that Plaintiffs' conduct is arguably prohibited.

Defendants' inability to settle on an interpretation of the recruitment provision is itself a sign that Plaintiffs have standing for their vagueness claim. Defendants now claim that the statute requires intent to persuade, by which they appear to mean intent to change someone's mind. Third Br. 13. But *Chiles* rejected a similar attempt to defeat standing by adopting a "narrowed construction of the statute" that "st[ood] at odds with how the State itself understood its law in proceedings below" and would have "render[ed] much of the law's language superfluous." 146 S. Ct. at 1019 n.*. Here, Defendants have repeatedly changed their interpretation of the recruitment provision over the course of this case—and did so yet again in the Third Brief. *See infra* pp. 17-18. And they readily concede that their interpretation creates redundancies in the statutory text. Third Br. 11-12.

7

In any event, Defendants' intent-to-persuade requirement is nowhere in the statutory text. The verb "recruit" encompasses acts taken with the intent to persuade, but it sweeps more broadly. It can mean "to find new people to take part in an activity or event," regardless of whether those people already wanted to do the activity. *Recruit*, Cambridge Dictionary, https://tinyurl.com/3h9v34th; *see also, e.g.*, *Recruit*, Oxford English Dictionary, https://perma.cc/NY83-59PK ("acquire (a person) as an employee, member, or supporter"). For instance, it would be natural to describe a company as recruiting applicants for an open position, even if the company does not want to persuade anyone to take the job who is not already enthusiastic about it, and even if everyone who applies has already decided to take the job if offered.

Defendants try to locate their intent-to-persuade requirement in the provision's status as "a nature-of-conduct offense." Third Br. 7 (quoting *State v. Mateyko*, 53 S.W.3d 666, 673 (Tenn. 2001)). But that designation simply means that a violator must "intend[] to complete a course of action that would constitute the offense." *Mateyko*, 53 S.W.3d at 673. In a child neglect case, for instance, "the defendant's conscious object or desire" must be "to engage in conduct constituting child neglect." *Id.* (citing Tenn. Code Ann. § 39-11-302(a) (defining "intentional")). Here, that means an intent to engage in conduct constituting recruiting, and that conduct does not require persuasion.

Nor do the provision's two mens rea elements demand an intent to persuade. The statute requires that the criminal defendant "intentionally" recruit—not intentionally persuade—and that the recruitment be "for the purpose of … [p]rocuring"

8

abortions. Tenn. Code Ann. § 39-15-201(a). An adult who intentionally connects minors to an abortion fund for purposes of out-of-state abortions arguably engages in recruiting, in the sense of enlisting new people. And she satisfies both mens rea elements because she does the recruiting intentionally and for the purpose of procuring abortions. Intent to persuade would be a third mens rea element, and Defendants offer no persuasive reason to add it on top of the two in the text. The statute's transportation prong illustrates the point: It has the same two textual mens rea elements, but no one thinks it requires intent to persuade.

Regardless, on any interpretation, Plaintiffs' conduct arguably violates the statute. If intent to persuade is not required, Plaintiffs engage in a variety of activities for which they could be prosecuted. For example, they advocate for abortion access, disseminate information about how and where to obtain legal abortions, and counsel individual unemancipated minors about legal abortion options. Second Br. 14-16. And they do so in an intentional effort to encourage pregnant minors who want to have an abortion, but who otherwise might not know how to obtain one, to follow through. Defs.' SUMF Resp., R.70, PageID #861-862, 878.

Plaintiffs' conduct would also arguably satisfy an intent-to-persuade element. Defendants say that Plaintiffs "merely share information or advocate for access." Third Br. 9. But Defendants ignore that Plaintiffs also engage in individual counseling of unemancipated minors about their legal abortion options. Rachel Welty is a family-law attorney who provides advice to minors about obtaining legal abortion care and

connects them to resources for doing so. Defs.' SUMF Resp., R.70, PageID #860. Behn likewise counsels minor social work clients about legal abortion options. *Id.* at PageID #876-877. This counseling goes beyond "mere[]" information sharing. Defendants' rigid line between "*post-decision* 'support[]'" and "*pre-decision* recruiting," Third Br. 13, fails to capture how people actually make "life-changing" decisions, *id.* at 44. Even after a minor makes the initial decision to seek abortion care, Plaintiffs' encouragement may be what induces her to actually obtain the abortion. *See* Hr'g Tr., R.35, PageID #405 (Behn explaining that "oftentimes these are young people who are at their most vulnerable point" and "need information" to "make an informed decision").

It is true that Plaintiffs testified they do not set out to persuade their clients to have abortions, *see id.* at PageID #374, 405-406, but that denial does not eliminate the threat of prosecution. Plaintiffs also testified that they know their counseling has persuaded clients to have abortions in the past, Defs.' SUMF Resp., R.70, PageID #861, 876-877, yet they intend to engage in the same counseling in the future. The fact that Plaintiffs intentionally continue to engage in conduct they know has been persuasive in the past would arguably be enough to prove they intend to persuade. Mens rea "may be established exclusively by circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). And evidence of prior consistent acts may be admitted to prove intent. *See State v. Jarman*, 604 S.W.3d 24, 48-49 (Tenn. 2020).

Defendants concede that a plaintiff can challenge a law without confessing to violating it. Third Br. 14. But they say that, "here, where Plaintiffs affirmatively testified

that they *won't* violate it, they should be held to that controversy-ending testimony." *Id.* That is not an accurate description of Plaintiffs' testimony. They disclaimed an intent to persuade, not an intent to violate the statute. But in any event, if Defendants were right, *Driehaus* would have come out the other way. In *Driehaus*, this Court had "reasoned that because SBA 'can only be liable for making a statement "knowing" it is false,' SBA's insistence that its speech is factually true 'makes the possibility of prosecution for uttering such statements exceedingly slim.'" 573 U.S. at 163 (quoting *Susan B. Anthony List v. Driehaus*, 525 F. App'x 415, 422 (6th Cir. 2013)). The Supreme Court disagreed. *Id.* The Commission responsible for enforcing the challenged law still could have found probable cause of a violation, "notwithstanding SBA's belief in the truth of its" statements. *Id.*; *see also Babbitt*, 442 U.S. at 301-02 (plaintiffs had standing despite denying any intent to "propagate untruths"). The same reasoning applies here. Although Plaintiffs disclaim an intent to persuade, a prosecutor might conclude otherwise (or might conclude intent to persuade is not required in the first place).

C.      **Plaintiffs face a credible threat of enforcement.**

Finally, there is a "credible threat" of prosecution. *Driehaus*, 573 U.S. at 159. A credible threat requires only "substantial risk that the harm will occur." *Cath. Charities of Jackson, Lenawee & Hillsdale Counties v. Whitmer*, 162 F.4th 686, 691 (6th Cir. 2025) (quoting *Driehaus*, 573 U.S. at 158).

To start, the recruitment provision's vagueness is chilling the exercise of Plaintiffs' constitutional rights. For instance, Welty stopped using her social media

account for fear of prosecution under the recruitment provision. *See* Hr'g Tr., R.35, PageID #369-370. "That chill is proof by omission—the plaintiffs want to speak on a topic, but do not—that they face a credible threat of enforcement." *Cath. Charities*, 162 F.4th at 691. The uncertain contours of the recruitment provision impose "pressure to avoid" speech that might lead to criminal prosecution. *First Choice*, 2026 WL 1153029, at *12 (internal quotation marks omitted).

Beyond chill, various other factors indicate a credible threat of enforcement, as Plaintiffs previously explained. Second Br. 28-33. But as *Chiles* illustrates, a refusal to disavow prosecution is sufficient on its own. The Supreme Court found a credible threat because Colorado "expressly declined to disavow enforcement" and emphasized that "no more is required." *Chiles*, 146 S. Ct. at 1019 n.*.

Defendants here have consistently failed to disavow enforcement. They refused to respond to Welty's pre-suit letter. *See* Letter, R.1-4, PageID #25-27; Defs.' SUMF Resp., R.70, PageID #866. Defendants complain that the letter asked them to disavow prosecution in the abstract. Third Br. 21. But nothing prevented them from responding with a more nuanced disavowal. Or Defendants could have testified at the preliminary-injunction hearing or provided declarations, but they declined to do so even at the district court's invitation. *See* Mem., R.40, PageID #562. Instead, Defendants have offered only their counsel's qualified, in-the-alternative, and shifting statements in briefing—all while acknowledging "that disavowal 'must be more than a mere litigation position.'" Third Br. 22 (quoting *Yoder v. Bowen*, 146 F.4th 516, 525 (6th Cir. 2025)).

Their latest brief only muddies the waters further by claiming that speech quite similar to Behn's would constitute recruiting. *Compare* Third Br. 8, *with* X Post, R.1-5, PageID #40.

*Chiles* also confirms that pre-enforcement standing does not require past enforcement or warning letters. At the time the Supreme Court ruled in *Chiles*, the challenged law had been in effect since 2019 without any warnings or enforcement against the plaintiff. *See* 146 S. Ct. at 1017-18. Yet the Court still found a credible threat of prosecution. *Id.* at 1019 n.*; *see also Cath. Charities*, 162 F.4th at 691.

This Court in *Ream* followed suit. The Court held that the plaintiff had pre-enforcement standing to challenge a law banning home distilling even though he had never previously distilled spirits at home, "the Treasury ha[d] not sent Ream a letter warning him," and "the home-distilling ban apparently has not been enforced in court for a long while." *Ream*, 2026 WL 1078212, at *3; *see also id.* at *8 (Mathis, J., dissenting) (noting that the challenged statute had not been enforced in over 50 years). The Court nevertheless found a credible threat of enforcement. *Id.* at *3. The Court should do the same here.

## II.  The recruitment provision is unconstitutionally vague.

The recruitment provision of Section 39-15-201(a) does not define what it means to "recruit" a person to obtain an abortion, and dictionary definitions, judicial interpretations, the statutory context, and the legislative history fail to shed sufficient

light on the meaning of the term. Plaintiffs and Tennesseans like them are thus unable to discern what conduct the statute proscribes, making it unconstitutionally vague.

A law is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson*, 576 U.S. at 595. Vague criminal laws are especially problematic, because "the consequences of imprecision" are "severe." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). So, too, are vague laws that "threaten[] to inhibit the exercise of constitutionally protected rights." *Id.* "[A] more stringent vagueness test" thus applies to a law that "interferes with the right of free speech." *Id.*; *see also Reno*, 521 U.S. at 871-72 ("The vagueness of [a content-based regulation of speech] raises special First Amendment concerns because of its obvious chilling effect on free speech."). "[G]overnment may regulate in the area" of "First Amendment freedoms" "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963).

Defendants correctly recognize (at 53) that a plaintiff bringing a facial vagueness challenge need not demonstrate that the law "is impermissibly vague in all of its applications" where it implicates "First Amendment freedoms" or "imposes criminal sanctions." *Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999) (quoting *Hoffman Estates*, 455 U.S. at 494). And they do not contest that the recruitment provision is such a law. But there is no basis for Defendants' alternative suggestion that an "overbreadth-like comparison is required." Third Br. 53-54. Instead, courts entertaining such a facial vagueness challenge simply inquire whether the

"enactment … define[s] the proscribed behavior with sufficient particularity to provide a person of ordinary intelligence with reasonable notice of prohibited conduct and to encourage non-arbitrary enforcement of the provision," without engaging in any comparison of the law's permissible and impermissible applications. *Belle Maer Harbor*, 170 F.3d at 558-59; *see also City of Chicago v. Morales*, 527 U.S. 41, 56-59 (1999) (plurality opinion); *Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 252-53 (6th Cir. 1994).

### A. The meaning of "recruit" is vague in the abortion context.

Defendants contend that the word "recruits" in the statute is not vague because it has a "well understood" meaning. Third Br. 45-46. According to Defendants, "in this context, the Act's reference to 'recruit' means 'to persuade someone,' or 'to induce or enlist (a person) to participate.'" *Id.* at 46. But as Defendants conceded in the district court, "the word 'recruit' is 'susceptib[le] to a wide array of possible meanings,'" Second Br. 52 (alteration in original) (quoting Defs.' PI Opp'n, R.22, PageID #218), and none of them is a natural fit in the context of abortion.

Abortion is not an organization that a person can join, nor can a person be "enrolled" in an abortion. *See Recruit*, Merriam-Webster Dictionary, https://perma.cc/J37P-Z8L8 ("to seek to enroll"; "to fill up the number of with new members"). It does not make sense to talk about "enlist[ing]" a person to "provide assistance" by obtaining an abortion. *See Recruit*, Oxford English Dictionary, *supra.* And abortion is not a collective activity a recruited individual could be persuaded to "join in" or "help with," First Br. 18 (quoting Post-Trial Jury Instrs., *United States v. Withers*,

No. 16-CR-0005, ECF No. 126-2, at 12 (W.D. Wis. Apr. 28. 2017)), or "induce[d] …
to participate" in, *see Recruit*, Oxford English Dictionary, *supra.* Although a statute is not
vague solely because it uses a word with multiple meanings, here it is unclear which if
any of the usual meanings applies.

The fact that courts have "rejected vagueness challenges to trafficking statutes
that use the same term," Third. Br. 47 (emphasis omitted), says little about what
"recruit" means here. As the district court explained in granting a preliminary
injunction, "a review of preexisting statutes involving other kinds of 'trafficking'
strongly suggests that the bill's authors simply imported the [word 'recruit'], without
elaboration, from contexts in which it makes significantly more sense." Mem., R.40,
PageID #542. In statutes concerning human trafficking for forced labor or sex, the
word "recruit" entails enlistment of a victim to work for the trafficker's criminal
organization or perform a certain criminal task, and the ultimate purpose is for the
victim to act at the behest of and for the benefit of the recruiter. The word "recruit"
thus makes sense to describe a defendant who "recruited" a 17-year-old to "engage in
commercial sex," "promising [her] that '[w]e can get this money together,'" and later
"set the prices for her services[] and took the majority of her earnings." *See United States
v. Snead*, No. 21-4333, 2022 WL 17975015, at *1, *3 (4th Cir. Dec. 28, 2022).

But recruiting for abortion is not analogous to sex trafficking. *See Trafficking*,
Cambridge Dictionary, https://tinyurl.com/ysxr3m9k ("the act of buying or selling
people, or of making money from work they are forced to do, such as sex work").

Getting a legal abortion does not entail joining an organization or working at the behest of another person, and "recruiting" someone to get an abortion does not implicate the economic motives involved in forced labor and sex trafficking contexts. Just because a word appears in multiple laws does not mean its definition can readily be transplanted between them. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 807-13 (2011) (Alito, J., concurring).

Defendants' contention that "recruit" has a "well understood" meaning is also belied by their ever-evolving efforts to define the term. Their inability to settle on a clear definition is further evidence that the recruitment provision fails to offer fair notice and invites arbitrary enforcement.

At the preliminary injunction stage, Defendants suggested in the district court that recruitment involves "*successful* persuasion to join a group or engage in an endeavor, usually a criminal one." Defs.' PI Opp'n, R.22, PageID #218-219. That results-based interpretation focused on "actually securing or enlisting an individual for a purpose." *Id.* at PageID #219. And Defendants said any other reading would "ignore the text of the statute." *Id.* (internal quotation marks omitted).

In appealing the preliminary injunction, however, they offered a competing definition that focused on "*targeted* conduct intended to induce or enlist" or "to drive a person to engage in a particular action." Defs.' PI Appeal Br. 24-25 (emphasis added). That targeting-based definition featured in Defendants' opening brief in this appeal. *See* First Br. 17-18, 20 (referring to "intentional targeting"). But Defendants now retreat

from the notion that recruiting requires targeting a particular individual. *Compare id.* at 19-20, 23, *with* Third Br. 8. They even accuse Plaintiffs of attacking a "strawman" for responding to Defendants' repeated references to "intentional targeting." Third Br. 8.

Instead, Defendants now say the provision "prevents only intentional actions to persuade" and does not "impose[] liability any time a listener is persuaded." *Id.* at 7. But Defendants fail to clearly articulate what sort of intentional actions they have in mind, if those actions do not need to be targeted. Nor do they attempt to reconcile this new interpretation with their prior position that only a results-based test is consistent with the text.

At bottom, there does not appear to be any definition of "recruit" that encompasses all of Defendants' proposed meanings, nor is there anything to stop Defendants from changing their interpretation again, exacerbating the risk of arbitrary enforcement.

Defendants' examples only create more confusion. Plaintiffs previously explained why hypotheticals involving coercion contradict the ordinary meaning of "recruit." Second Br. 55-56. Although Defendants continue to insist otherwise, Third Br. 52, as a matter of common usage, a person does not recruit someone to do something by forcing them to do it. Defendants also say that Welty's speech is not covered while maintaining that "[o]f course" hypothetical speech quite similar to hers would fall within the provision. Second Br. 20 (quoting Defs.' MSJ Mem., R.69, PageID #828). And Defendants now offer yet another example that raises more questions than

it answers. According to Defendants, "[a] poster saying 'I *Want You*' to join the Army seeks to persuade," and, similarly, "[i]f Plaintiffs told minors, 'I *want you* to come with me to get an out-of-state abortion without your parents' consent,' that'd be recruiting." Third Br. 8. But Behn said almost exactly that: "I welcome the opportunity to take a young person out of state who wants to have an abortion even if it lands me in jail." X Post, R.1-5, PageID #40. Defendants have said Behn's post is not covered by the statute, but it is anyone's guess what the meaningful difference is between these two examples. Defendants' efforts to explain what recruitment means only further demonstrate its vagueness.

**B.    The provision's mens rea elements do not cure its vagueness.**

Defendants contend that the provision's scienter requirement "alleviate[s]" any indeterminacy in the meaning of "recruit," and the district court largely agreed. *See* Third Br. 51 (quoting *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007)); Mem. Op., R.81, PageID #1129 (holding that the fact that a person must act "'intentionally with respect to the nature of the conduct'" foreclosed the possibility of "accidentally recruit[ing] a minor" and thus mitigated any potential vagueness (quoting Tenn. Code Ann. § 39-11-302(a)). To be sure, "a scienter requirement may mitigate a law's vagueness" in some circumstances, *Hoffman Estates*, 455 U.S. at 499, but it does not help where "the contours" of that "requirement are themselves unclear," *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 535 (6th Cir. 1998); *see also Smith v. Goguen*, 415 U.S. 566, 579-80 (1974) (scienter requirement does not immunize law from vagueness challenge). A

19

law that applies only to purposeful conduct can still be vague if people do not know what they have to do on purpose to violate it.

Here, it remains unclear what a person must do in connection with procuring an abortion to violate the statute. Take, for example, an abortion fund that distributes a flyer encouraging readers to take advantage of its services. Staff for the abortion fund may intend to distribute the flyer and even do so "for the purpose of" procuring lawful out-of-state abortions, but it is unclear whether their conduct counts as recruitment. And any "mistake" about what recruitment means on their part "is no defense to criminal prosecution." *See State v. Casper*, 297 S.W.3d 676, 690 (Tenn. 2009). So long as a criminal defendant intended to engage in her conduct, it makes no difference whether she knew the conduct was illegal. *Id.* In other words, even if the statute were clear about what must be intended (the mens rea), it remains unclear about what must be done (the actus reus).

Defendants' attempts to save the recruitment provision from its vagueness by offering a narrower interpretation of the mens rea requirement are unavailing. Defendants' interpretation of the recruitment provision has varied throughout the course of this litigation, but in their latest telling, the Act requires not only an intent to engage in the conduct amounting to recruitment, for the purpose of procuring an abortion, but also an "intent to persuade." Third Br. 1. But that intent-to-persuade requirement is nowhere to be found in the statutory text, and "federal courts are without

20

power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent," *see Boos v. Barry*, 485 U.S. 312, 330 (1988).

An intent to persuade cannot be inferred from either of the law's two explicit mens rea elements. *See supra* p. 8-9. Although the statute requires that the recruitment be done "intentionally," an act is intentional under Tennessee law if the actor intends the result or merely intends to engage in the conduct itself. *See* Tenn. Code Ann. § 39-11-302(a). As the district court recognized, a person might violate the recruitment provision if they merely intend to engage in the conduct of recruitment. Mem. Op., R.81, PageID #1114 n.4. And depending on what recruitment means, a person might engage in that conduct without intending to persuade. Likewise, the provision requires that a person engage in recruitment "for the purpose of" an abortion, but that does not answer what constitutes recruiting and would only require intent to persuade if recruiting can only be done with that intent.

Any intent-to-persuade requirement must therefore derive from the verb "recruit" itself. And as a matter of common usage, intentionally recruiting is not the same thing as intentionally persuading. For example, a legal recruiter might work with a law firm associate to find her a new position without intending to persuade her to accept any particular job. *See* Second Br. 23. Or consider a social worker who dedicates her practice to counseling pregnant minors who are absolutely certain they want an abortion but do not know how to obtain one. Even if there is no doubt that the social worker has intentionally engaged in this counseling and has done so for the purpose of

21

helping the minors procure abortions, it does not follow that she intended to persuade minors to terminate their pregnancies, at least not in the way Defendants seem to understand persuasion. *See supra* p. 7 (noting that by intent to persuade, Defendants appear to mean intent to change someone's mind); *see also* Third Br. 13 ("[T]here's no recruiting if the minor has already made her plans or chosen a path." (internal quotation marks and alterations omitted)). Because "recruiting" does not require intentional persuasion, the bounds of the provision remain a mystery.

## C. Defendants' other arguments in support of a limiting construction are unavailing.

None of Defendants' remaining arguments help resolve the law's indeterminacy. Instead, they sow even more confusion.

Nothing about the broader context of Section 39-15-201 clarifies the meaning of recruitment. As Plaintiffs previously explained, there is no "common feature to extrapolate" from the word "recruit" and its neighbors "harbor" or "transport." Second Br. 21 (quoting *S.D. Warren Co. v. Me. Bd. of Env't Prot.*, 547 U.S. 370, 379-80 (2006)). Because these words share nothing in common, the *noscitur a sociis* canon is "no help." *Id.* (quoting *S.D. Warren*, 547 U.S. at 379-80). Defendants' only response is that all three words "involve some affirmative effort to traffic a minor." Third Br. 9. But that defines the relevant commonality at far too high a level of generality. If Defendants simply mean to point out that all three terms in Section 39-15-201(a) are verbs, Plaintiffs of course agree. But that says nothing about what type of action is required for recruiting

22

as opposed to harboring or transporting. Neither harbor nor transport requires an intent to persuade, which Defendants now claim is the limiting principle for the meaning of "recruit." *See id.* at 7.

The canon against surplusage undermines Defendants' narrowed interpretation. If the recruitment provision prohibited only "intentional efforts to *persuade* minors to obtain elective abortions without parental consent," *id.*, then there would be no need for an exception for the provision of medical diagnosis or consultation regarding pregnancy care, *see* Tenn. Code Ann. § 39-15-201(f)(1). Defendants appear to concede that their reading would result in unnecessary language. But they insist that "'[r]edundancies are common in statutory drafting,'" and there is nothing remarkable about the Tennessee legislature making "doubly sure that the provision of medical information regarding pregnancy care isn't included." Third Br. 11-12 (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)). To be sure, the Supreme Court has acknowledged that "[s]ometimes the better overall reading of a statute contains some redundancy," and "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton*, 590 U.S. at 239. But the point here is that the operative language of the statute is not clear in isolation. And in trying to divine the meaning of unclear text, Tennessee courts make "every effort not to interpret" it "in a manner that renders other provisions of the same statute … superfluous." *Falls v. Goins*, 673 S.W.3d 173, 180 (Tenn. 2023); *cf. Chiles*, 146 S. Ct. at 1019 n.* (refusing to adopt the state's "narrowed construction of [a] statute" for

purposes of standing where that construction "would render much of the law's language superfluous").

Finally, Defendants miss the point by complaining that Tennessee courts rely on legislative history only as a "last resort," and that the legislative history cannot alter the Act's "clear meaning." Third Br. 50-51 (quoting *State v. Deberry*, 651 S.W.3d 918, 930 (Tenn. 2022)). Again, Plaintiffs' point is that the text is *not* clear. The two examples of recruiting given by the law's sponsor do not create the vagueness in the statute, but they do "reinforce[]" it. Second Br. 53. In other words, Plaintiffs' argument is simply that, at best, the history does not shed additional light on the meaning of "recruit" (in the case of the "story of recruiting children to take them across state lines to abort their babies") or, at worst, suggests a broader definition than the one advanced by Defendants (in the case of the social media post by Behn expressing her willingness "to take a young person out of state who wants to have an abortion"). House Tr., R.1-6, PageID #61.

### III. If the court rules for Plaintiffs on vagueness, it should remand for reconsideration of the scope of relief.

If the Court reaches the protective cross-appeal and rules for Plaintiffs on their vagueness claim, the Court should remand to the district court to reconsider the scope of the injunction. Contrary to Defendants' suggestion (at 57-58), this Court has not yet resolved whether nonparty relief may be available in challenges to state laws, where the remedy is limited to the geographic territory of the district court. *See Doe v. Burlew*, 165 F.4th 525, 530 (6th Cir. 2026) ("We have yet to decide … how *CASA* applies in the

context of a state-law challenge."); *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 490 (6th Cir. 2023) (holding that "the district courts likely abused their discretion by deploying" nonparty relief in the particular case, while reserving judgment on whether "courts in some instances may wield such power"). But the district court's reasoning for issuing nonparty relief here was tied to remedying Plaintiffs' overbreadth claim. *See* Mem. Op., R.81, PageID #1131. If this Court instead rules for Plaintiffs on vagueness, it would be prudent to let the district court reconsider the scope of relief in the first instance.

## <u>CONCLUSION</u>

For the foregoing reasons, if the Court reaches the protective cross-appeal, it should reverse the district court and rule for Plaintiffs on their vagueness claim.

Dated:  May 6, 2026                                Respectfully Submitted,

*/s/ William Powell*

Daniel A. Horwitz                          William Powell
Sarah L. Martin                            *Counsel of Record*
Laura E. Cantwell                          Rupa Bhattacharyya
HORWITZ LAW, PLLC                          Shelby Calambokidis
4016 Westlawn Dr.                          Elizabeth R. Cruikshank
Nashville, TN 37209                        INSTITUTE FOR CONSTITUTIONAL
(615) 739-2888                               ADVOCACY AND PROTECTION
daniel@horwitz.law                         Georgetown Law
                                           600 New Jersey Avenue NW
                                           Washington, DC 20001
                                           (202) 661-6629
                                           whp25@georgetown.edu

# CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I hereby certify that the foregoing brief complies with the type-volume requirements of Federal Rule of Appellate Procedure 28.1(e)(2)(C) because it contains 6,494 words, excluding those portions of the brief exempted by Federal Rule 32(f) and Sixth Circuit Rule 32(b). I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in 14-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

*/s/ William Powell*
William Powell

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of May 2026, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ William Powell*
William Powell